UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FRANK'S NURSERY, LLC,
     Plaintiff,

     v.

MARTIN J. WALSH, Secretary
United States Department of Labor,
     Defendant.

No. 4:21-cv-03485

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION**

Respectfully submitted,

JENNIFER B. LOWERY
United States Attorney

By: /s/ Annalisa L. Cravens
    Annalisa L. Cravens
    Assistant United States Attorney
    *Attorney-in-Charge*
    Texas Bar No. 24092298
    Southern District No. 2791281
    1000 Louisiana Street, Suite 2300
    Houston, Texas 77002
    Tel.: (713) 567-9489
    Fax: (713) 718-3303
    Email: Annalisa.Cravens@usdoj.gov

    *Counsel for Defendant*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

    A.  Statutory and Regulatory Background ....................................................... 3

       i.    The H-2A framework and relevant H-2A regulations .................................. 3

       ii.    The Department's H-2A enforcement system .............................................. 5

    B.  Factual Background.................................................................................... 6

    C.  Procedural History.................................................................................... 8

III.    LEGAL STANDARDS....................................................................................... 9

IV.    ARGUMENT ................................................................................................... 10

    A.  The ARB's decision is supported by the record and in accordance with law................ 10

       i.    Plaintiff's drug testing policy was a material condition of employment, which Plaintiff was required to disclose it in its job order. ................................................. 11

       ii.    Plaintiff failed to provide sanitary housing to its H-2A and U.S. workers................ 14

       iii.    Plaintiff furnished inadequate pay statements to H-2A and U.S. workers. ............... 16

       iv.    Plaintiff's deductions from H-2A workers' earnings were unreasonable. ................ 17

       v.    The ARB reasonably awarded back wages and CMPs................................. 18

    B.  The Department's adjudication does not violate Article III.......................................... 20

       i.    Plaintiff impliedly consented to the Department's adjudication. .............................. 21

       ii.    The Department is not exercising "judicial power." ................................... 21

       iii.    The Department is only adjudicating public rights. ................................... 22

V.    CONCLUSION................................................................................................. 25

CERTIFICATE OF SERVICE ........................................................................................ 26

## **TABLE OF AUTHORITIES**

## <u>Cases</u>

*Atlas Roofing Co. v. OSHRC*, 430 U.S. 442 (1977)................................................................. 24, 25

BALCA No. 2011-PER-02196, ETA No. A-08256-86573, slip op. (BALCA May 1, 2014)...... 12

*Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325 (5th Cir. 2022)............................ 9

*Carr v. Saul*, 141 S. Ct. 1352 (2021) ........................................................................................ 19

*Crowell v. Benson*, 285 U.S. 22 (1932) ..................................................................................... 25

*ExxonMobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220 (N.D. Tex. 2019)...................................... 10

*FCC v. Prometheus Radio Project*, 141 S. Ct. 1150 (2021).................................................. 10, 20

*Ferreira v. Carpionato Corp.*, 895 F.2d 818 (1st Cir. 1990)...................................................... 13

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ............................................................. 24

*In re Collier*, 2022 WL 874730 (S.D. Ill. 2022) ....................................................................... 24

*In re Trib. Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018) ........................................................... 21

*Jarkesy v. SEC*, -- F.4th --, 2022 WL 1563613 (5th Cir. May 18, 2022) .............................. 23, 24

*John Wood Grp. USA, Inc. v. ICO, Inc.,* 26 S.W.3d 12 (Tex. App. 2000).................................... 13

*Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759 (Tex. App. 2004) ............................. 13

*Lloyd Sabaudo Societa Anonima Per Azioni v. Elting,* 287 U.S. 329 (1932)......................... 23, 24

*Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221 (D.C. Cir. 1993) ......................... 10

*Matter of Simeio Sols., LLC*, 26 I. & N. Dec. 542 (2015) ........................................................... 13

*Mendoza v. Perez*, 754 F.3d 1002, 1008 (D.C. Cir. 2014) ........................................................... 4

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .................... 10

*N. Pipeline Constr. Co. v. Marathon Pipeline Co*, 458 U.S. 50 (1982) ...................................... 24

*Neeley v. Bankers Trust Co.*, 757 F.2d 621 (5th Cir. 1985)........................................................ 13

*Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320 (1909) ..................................................... 23

iii

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365 (2018) ......... 22, 23

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) ............................................................. 21, 22

*Ruiz v. Fernandez*, 2012 WL 1442556 (E.D. Wash. 2012) ............................................................ 23

*Ruiz v. Fernandez*, 2012 WL 1442556, at *3 (E.D. Wash. 2012). ................................................. 5

*San Luis Obispo Mothers for Peace v. NRC*, 789 F.2d 26 (D.C. Cir. 1986). ........................ 10, 19

*Sasser v. EPA*, 990 F.2d 127, 130 (4th Cir. 1993) ........................................................................ 24

*Sierra Club v. EPA*, 939 F.3d 649 (5th Cir. 2019) ........................................................................ 10

*Stern v. Marshall,* 564 U.S. 462 (2011) .................................................................................. 22, 23

*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992) ..................................... 13

*Tull v. United States*, 481 U.S. 412, 419 (1987) .......................................................................... 23

*United States v. Xuan*, 1993 WL 114335 (E.D. La. 1993) ........................................................... 24

*Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) ...................................................... 21

## Statutes

5 U.S.C. § 706(2)(A) ..................................................................................................................... 10

8 U.S.C. § 1101(a)(15)(H) ............................................................................................................... 4

8 U.S.C. § 1101(a)(15)(H)(ii)(a) ...................................................................................................... 3

8 U.S.C. § 1188 ............................................................................................................................. 23

8 U.S.C. § 1188(a)(1) ...................................................................................................................... 4

8 U.S.C. § 1188(a)(1)(B) .................................................................................................................. 4

8 U.S.C. § 1188(b)(4) ...................................................................................................................... 4

8 U.S.C. § 1188(g)(2) ...................................................................................................................... 5

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................................................ 9

## Regulations

20 C.F.R. § 501.16(a)(1) .................................................................................................................. 6

iv

20 C.F.R. § 501.19(a) ........................................................................................................ 6

20 C.F.R. § 501.20(a) ........................................................................................................ 6

20 C.F.R. § 501.33(a) ........................................................................................................ 6

20 C.F.R. § 655.100 ........................................................................................................... 4

20 C.F.R. §  655.103(b). ............................................................................................... 4, 12

20 C.F.R. § 655.120(a) .................................................................................................. 5, 17

20 C.F.R. § 655.121(a)(1) ................................................................................................ 4

20 C.F.R. § 655.121(a)(3) ................................................................................................ 13

20 C.F.R. § 655.121(a)-(d) ............................................................................................... 4

20 C.F.R. § 655.121(b) ..................................................................................................... 13

20 C.F.R. § 655.122(a) ...................................................................................................... 4

20 C.F.R. § 655.122(b) ..................................................................................................... 13

20 C.F.R.  § 655.122(d)(l) ............................................................................................ 8, 14

20 C.F.R. § 655.122(d)(l)(i) .......................................................................................... 5, 14

20 C.F.R. § 655.122(k)(8) .......................................................................................... 5, 8, 16

20 C.F.R. § 655.122(p)(l)-(2) ........................................................................................ 5, 17

20 C.F.R. § 655.122(p)(2) ........................................................................................... 17, 18

20 C.F.R. § 655.130(a) ...................................................................................................... 4

29 C.F.R. § 18.12(b) ......................................................................................................... 19

29 C.F.R. § 18.20 .............................................................................................................. 19

29 C.F.R. § 18.80(c) .......................................................................................................... 19

29 C.F.R. § 18.101 ............................................................................................................ 19

29 C.F.R. § 501.15 ............................................................................................................. 5

29 C.F.R. § 501.19(b) ....................................................................................................... 20

29 C.F.R. § 501.31 ............................................................................................................. 6

29 C.F.R. § 501.32 ................................................................................................ 6

29 C.F.R. § 501.34 ........................................................................................... 6, 19

29 C.F.R. § 501.35 ................................................................................................ 6

29 C.F.R. § 501.42(a) ................................................................................... 6, 19, 22

29 C.F.R. § 531.38 ......................................................................................... 17, 18

29 C.F.R. part 531 .............................................................................................. 17

29 C.F.R. § 1910.142 ............................................................................................ 5

29 C.F.R. § 1910.142(a)(3) .................................................................................. 15

29 C.F.R. § 1910.142(j) ...................................................................................... 15

Sec'y's Order 01- 2020, 85 Fed. Reg. 13187 (Mar. 6, 2020) ................................. 6, 22

## **Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ....................................................... 11, 15

## I.      INTRODUCTION

Employers voluntarily participate in the H-2A work visa program because it confers a benefit not afforded to other employers in the United States: the ability to hire foreign agricultural workers to fulfill temporary labor needs. This significant benefit, however, comes with significant responsibilities, set out in the Department of Labor's ("Department") H-2A regulations.

This case involves an employer, Plaintiff Frank's Nursery, LLC, that was granted authorization to hire H-2A workers but failed to fulfill its concomitant responsibilities. First, after being granted authorization to hire H-2A workers, Plaintiff imposed a mandatory drug testing requirement on its H-2A workers and U.S. workers, which it had failed to disclose as required.[1] Second, it housed its H-2A workers and U.S. workers in unsanitary conditions—a trailer surrounded by trash, broken appliances, and soiled mattresses and with rodent feces in the kitchen. Third, it failed to include its Federal Employer Identification Number ("FEIN") in the pay statements issued to H-2A workers and U.S. workers, contrary to an explicit requirement in the H-2A regulations. Fourth, it deducted thousands of dollars in Federal Insurance Contribution Act ("FICA") taxes from the earnings of its H-2A workers, who are exempt from such taxes, bringing their wages below the required rate for H-2A workers.

In administrative proceedings before the Department, the Department's Administrative Review Board ("ARB") concluded that Plaintiff violated four H-2A program requirements: the requirements that employers disclose all material terms and conditions of employment, furnish sanitary housing to H-2A and U.S. workers, furnish adequate written pay statements to such

---

[1] For ease of reference, the term "U.S. workers" as used in this brief refers only to those non-H-2A workers that Plaintiff hired through its H-2A-required recruitment efforts and who performed work in "corresponding employment," which means they performed work included in the H-2A application or any agricultural work performed by the H-2A workers. For purposes of this brief, the term does not refer to any other domestic workers Plaintiff may have employed, such as permanent workers who performed administrative work.

workers, and refrain from unreasonable deductions from workers' earnings. AR841. Plaintiff was ordered to pay Civil Money Penalties ("CMPs") of $12,387, as well back wages of $12,036.16. *Id.* Plaintiff now challenges the ARB's decision under the Administrative Procedure Act ("APA"), reprising its arguments that none of the above conduct violated the H-2A regulations. The ARB reasonably rejected these arguments below, and this Court should reject them as well.

The ARB appropriately concluded that Plaintiff's drug testing policy is a material condition of employment, which Plaintiff was required to provide advance notice of, because mandatory drug testing could reasonably dissuade a worker from seeking employment with Plaintiff and impacts whether it would employ a particular worker. The cases that Plaintiff cites, which primarily concern state contract law, do not support its argument to the contrary. The ARB's conclusion that Plaintiff's employer-provided housing failed to meet applicable standards is fully supported by the undisputed evidence of the conditions of this housing, which Plaintiff's owner admitted he would "absolutely" not want to live in. AR836. Plaintiff's claim to the contrary is contradicted by the record and fails to acknowledge that its obligation to provide sanitary housing is ongoing. Plaintiff's attempt to shift its own responsibility to include the required information in its pay stubs to its third-party payroll processor is meritless. And its reliance on authorities to claim that there is no requirement to include specific information in its pay stubs is likewise meritless because those authorities are not applicable to the H-2A program. The ARB also appropriately concluded that Plaintiff's deductions of FICA taxes from the earnings of H-2A workers were unreasonable, as it is unreasonable to deduct taxes that employees do not owe. Plaintiff's claim that its H-2A workers consented to these deductions rests on a misapplication of Internal Revenue Service ("IRS") forms and guidance.

Plaintiff also contends, without explanation, that the ARB failed to follow Department regulations in awarding CMPs for the H-2A violations it found. ECF No. 18 at 24. Plaintiff forfeited this claim with respect to all but one of its four violations—its unlawful deductions—by failing to contest the amount or reasonableness of the CMP assessment below. In any event, the ARB reasonably explained the CMPs and back wages it ordered for this violation, and Plaintiff fails to offer any reason to disturb the CMPs awarded for any of the other violations.

Finally, Plaintiff argues that the Department's H-2A adjudicatory regime is contrary to Article III of the Constitution. Plaintiff never raised this objection in four years of litigation before the agency, and the Court should reject it now. Agency judges do not issue binding judgments in the Article III sense, so they are not unconstitutionally exercising "judicial Power." And regardless, there are only public rights at issue here. Even if none of that were true, Plaintiff impliedly consented to agency adjudication, which resolves any Article III issue.

The Court should accordingly grant summary judgment to Defendant on Plaintiff's APA and constitutional claims, deny Plaintiff's motion for summary judgment, and enter a judgment directing Plaintiff to pay the back wages and CMPs that it owes.

## II.    BACKGROUND

### A.  Statutory and Regulatory Background

#### i.    *The H-2A framework and relevant H-2A regulations*

Under the H-2A program, qualifying employers may hire foreign workers "to perform agricultural labor or services" of "a temporary or seasonal nature" in the United States. 8 U.S.C. § 1101(a)(15)(H)(ii)(a). To do so, the employer must first seek certification from the Department that (1) "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed" to fill the open position, and (2) hiring foreign workers

3

"will not adversely affect the wages and working conditions of workers in the United States similarly employed." *Id.* at 1188(a)(1); 20 C.F.R. § 655.100.

Congress directed the Secretary of Labor ("Secretary") to promulgate regulations implementing the H-2A program. 8 U.S.C. § 1101(a)(15)(H). Under these regulations, an employer that wishes to hire H-2A workers must first recruit U.S. workers by submitting a "job order, Form ETA-790" to the state workforce agency ("SWA") serving the area of intended employment. 20 C.F.R. § 655.121(a)(1); *see also* 8 U.S.C. § 1188(b)(4). The H-2A regulations define a job order as "[t]he document containing the material terms and conditions of employment" on the employer's Form ETA-790 submitted to the SWA. *Id.* at 655.103(b). The SWA recruits domestic workers using the terms and conditions contained in the job order and refers interested applicants to the employer. 20 C.F.R. § 655.121(a)-(d). After posting the job order with the appropriate SWA, a prospective H-2A employer must then file an Application for Temporary Employment Certification ("H-2A Application") with the Department, and must include a copy of its job order, Form ETA-790, with its H-2A Application. 20 C.F.R. § 655.130(a).

Once "an employer's H-2A application is approved and the employer hires foreign laborers," the employer "must continue to provide its American and foreign workers the minimum wages and working conditions laid out in the regulations to ensure the employment of foreign workers does not adversely affect . . . similarly employed American workers." *Mendoza v. Perez*, 754 F.3d 1002, 1008 (D.C. Cir. 2014) (citing 20 C.F.R.§ 655.122(a)); 8 U.S.C. § 1188(a)(1)(B). As relevant here, the employer must provide housing that complies with "the full set of" Occupational Safety and Health Administration ("OSHA") sanitation standards for temporary

labor camps to H-2A workers and non-H-2A workers in corresponding employment[2] who are not reasonably able to return to their residence in the same day. 20 C.F.R. § 655.122(d)(l)(i) (citing 29 C.F.R. § 1910.142). Additionally, employers must furnish each H-2A worker and non-H-2A worker in corresponding employment with "one or more written statements . . . on or before each pay day" containing, among other information, "[t]he employer's name, address, and FEIN." *Id.* at 655.122(k)(8). And all deductions from workers' earnings must be reasonable and employers are prohibited from making unreasonable deductions that reduce workers' wages below the required rate, here the Adverse Effect Wage Rate ("AEWR")[3] rate. 20 C.F.R. § 655.120(a), 655.122(p)(l)-(2).

### ii.    The Department's H-2A enforcement system

The Secretary is responsible for enforcing the requirements of the H-2A program. *Ruiz v. Fernandez*, 2012 WL 1442556, at *3 (E.D. Wash. 2012). By statute, the Secretary "is authorized to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of contractual obligations, as may be necessary to assure employer compliance with terms and conditions of employment" of the H-2A program. 8 U.S.C. § 1188(g)(2). To fulfill this enforcement responsibility, the Secretary primarily relies on the Department's Wage and Hour Division ("WHD"). 29 C.F.R. § 501.15. The WHD Administrator investigates possible H-2A violations and, where the Administrator determines violations have occurred, may institute administrative proceedings to recover back wages or debar the employer from receiving future H-2A labor certifications, among other sanctions and remedies. *Id.* at

---

[2] Corresponding employment is defined as "[t]he employment of workers who are not H-2A workers by an employer who has an approved H-2A Application . . . in any work included in the job order, or in any agricultural work performed by the H-2A workers." 20 C.F.R. § 655.103(b).

[3] During the relevant period, the AEWR was defined as "[t]he annual weighted average hourly wage for field and livestock workers (combined) in the States or regions as published annually by the U.S. Department of Agriculture (USDA) based on its quarterly wage survey." 20 C.F.R. § 655.103(b) (2010).

501.16(a)(1), 501.20(a). The Administrator may also impose CMPs through administrative proceedings. *Id.* at 501.19(a).

To institute administrative proceedings, the Administrator issues a determination letter explaining WHD's findings and imposes sanctions and remedies. 29 C.F.R. §§ 501.31, 501.32. An employer may request a hearing before an Administrative Law Judge ("ALJ") to review the Administrator's determination. *Id.* at 501.33(a), 501.34, 501.35. The parties may appeal an ALJ's decision to the Department's ARB. *Id.* at 501.42(a); Sec'y's Order 01- 2020, 85 Fed. Reg. 13187 (Mar. 6, 2020). And the Secretary may, in the Secretary's discretion, review the ARB's decision. 85 Fed. Reg. 13187. Absent such review, the ARB's decision is the final agency decision. *Id.*

### B.  Factual Background

Plaintiff is a commercial nursery and employer in Richmond, Texas. AR149. WHD investigated Plaintiff's compliance with the H- 2A program requirements covering the period from February 2015 to April 2016. During this period, Plaintiff was granted two certifications from the Department to employ H-2A workers, one for February 6 through November 30, 2015, and another for February 1 through November 30, 2016. AR149.

WHD's investigation revealed that Plaintiff imposed mandatory drug testing on its H-2A and U.S. workers during the 2016 season, without providing any advance notice in its job order. In November 2015, Plaintiff submitted a job order Form ETA-790 to the relevant SWA, the Texas Workforce Commission ("TWC"), requesting nine "[n]ursery [w]orkers" for the 2016 season. AR500, AR515. The Form ETA-790 that Plaintiff submitted to the TWC contains a checklist of 13 potential job requirements and directs employers to "check all requirements that apply." AR502. One of these 13 potential requirements is "Drug Screen[ing]"; Plaintiff did not check this box. *Id.*; *see also* AR830-31. Plaintiff also attested that its job order "describes the actual terms and conditions of the employment being offered by me and contains all the material

6

terms and conditions of the job." AR505. The TWC recruited and referred U.S. workers to Plaintiff using this job order.

Despite not indicating in its job order that drug testing was a term or condition of the positions, Plaintiff instituted a drug testing policy after hiring all the U.S. and H-2A workers that it employed in its nursery during the period covered by the job order. AR831. Plaintiff's policy stated that refusal to take a drug test would result in immediate termination and that positive test results were grounds for discipline, up to and including termination. AR544. Plaintiff then administered a drug test on all its employees. AR831.

Additionally, during the 2016 season, Plaintiff housed H-2A workers and U.S. workers in conditions that its owner admitted he would "[a]bsolutely not" want to live in. AR189. Both H-2A and the U.S. workers were housed in a residential trailer on Plaintiff's property. WHD's inspection of the trailer revealed that the area immediately surrounding the trailer was cluttered with trash and debris, as well as evidence of a vermin infestation inside the trailer. AR556-560. A malfunctioning stove and a pile of garbage were next to the trailer's entrance. AR556. Soiled mattresses were also on the ground immediately next to the trailer. AR559. And inside the trailer, rat feces were in the kitchen cabinets. AR563.

Plaintiff also did not include its FEIN in the pay statements that it issued to its H-2A workers and U.S. workers. AR833. For instance, on April 15, 2016, Plaintiff issued a paycheck to Robert Villalpando, a worker referred by the TWC, for the period from April 3 to April 9, 2016; neither the paycheck nor the accompanying pay statement provides its FEIN. AR549.

Plaintiff also deducted FICA taxes from the wages of its H-2A workers. In total, it deducted $12,036.16 in FICA taxes from these workers' earnings between February 2015 and April 2016, during which time their wages were no more than the AEWR. AR829, AR839.

7

### C. Procedural History

WHD issued a Determination Letter dated January 4, 2018. AR009. As relevant here, it explained that Plaintiff's failure to indicate on the job order that drug testing was a condition of employment violated the H-2A regulations' disclosure requirements, and that Plaintiff had violated the requirements to provide sanitary housing and adequate pay statements to H-2A workers and non-H-2A workers in corresponding employment and refrain from making unreasonable deductions from workers' earnings. AR013-14. WHD assessed CMPs for these violations and back wages equal to the FICA taxes that Plaintiff had deducted from H-2A workers' wages. *Id.* Plaintiff timely appealed these portions of WHD's determination.

Plaintiff and the WHD Administrator filed cross-motions for summary decision. AR064, AR146. The ALJ granted the Administrator's motion with respect to Plaintiff's failure to furnish sanitary housing or adequate pay statements to its H-2A workers and U.S. workers, and its unlawful deductions from H-2A workers' pay. AR616-17 (citing 20 C.F.R. §§ 655.122(d)(1), (k)(8), (p)). However, the ALJ ruled that Plaintiff was not required to disclose its drug testing requirement in its job order. AR615. Plaintiff and the Administrator timely petitioned the ARB for review of different parts of the ALJ's decision.[4]

The ARB reversed the ALJ's ruling on the drug testing requirement and affirmed the ALJ's conclusion with respect to the conditions of Plaintiff's housing, its failure to include its FEIN in its pay statements, and its deductions of FICA taxes from H-2A workers. AR841. The ARB concluded that Plaintiff's drug testing requirement was a material condition of employment, and thus had to be disclosed on Plaintiff's job order, because, among other reasons, it could affect an

---

[4] WHD had also determined that Plaintiff failed to pay adequate wages to U.S. workers who performed the same duties as its H-2A workers (i.e., in corresponding employment), for which it assessed CMPs and back wages, AR014, but the ALJ concluded that there was insufficient evidence to support this particular claim. AR614. The Administrator did not seek review of the ALJ's denial of summary decision on this claim.

H-2A employee's decision to apply for or accept employment with Plaintiff. AR830. The ARB affirmed the ALJ's conclusion that Plaintiff's housing conditions failed to meet OSHA sanitation standards and that Plaintiff had an ongoing responsibility to provide sanitary housing; that Plaintiff's failure to include its FEIN in its pay statements violated H-2A regulations; and that Plaintiff's deductions of FICA taxes were unreasonable because, pursuant to H-2A regulations, "the taxes must actually be owed by the employees . . . to avoid a violation." AR833-40.

The ARB upheld the CMP and back wage amounts assessed by WHD for these violations. AR841. The ARB noted that Plaintiff failed to challenge (before the ALJ or the ARB) the amount or reasonableness of the CMP assessed for its undisclosed drug testing requirement, its unsanitary housing, or its failure to include its FEIN in its pay statements. AR829, AR833, AR835. The ARB declined to reduce the back wages or CMPs assessed for Plaintiff's unlawful deductions in light of "the magnitude of the violation," and because Plaintiff "offered no evidence that the H-2A workers were actually repaid the amounts deducted for" or "any analysis of the relevant factors" for assessing CMPs in the H-2A regulations. AR840-41.

On October 22, 2021, Plaintiff filed a complaint against Defendant challenging the ARB's decision under the APA. ECF No. 1. Additionally, despite litigating before the Department for four years without challenging the constitutional authority of the agency's ALJs or its ARB, Plaintiff now argues that the Department's adjudication violated Article III. *Id.*

## III.   LEGAL STANDARDS

Under Rule 56, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). When assessing a summary judgment motion in an APA case, the motion "stands

in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *ExxonMobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 228 (N.D. Tex. 2019). "The entire case on review is a question of law[.]" *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

The APA permits courts to set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" 5 U.S.C. § 706(2)(A). "An action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sierra Club v. EPA*, 939 F.3d 649, 663-64 (5th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "This inquiry is 'narrow.'" *Id.* at 664 (quoting 463 U.S. at 43). "A court simply ensures . . . the agency . . . has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). "[T]he party challenging an agency's action" under the APA "bears the burden of proof." *San Luis Obispo Mothers for Peace v. NRC*, 789 F.2d 26, 37 (D.C. Cir. 1986).

## IV.     ARGUMENT

### A.  The ARB's decision is supported by the record and in accordance with law.

The ARB's decision did not violate the APA. The ARB reasonably determined that Plaintiff violated four of the H-2A regulations' requirements—the requirements that employers disclose all material terms and conditions of employment in the job order, furnish sanitary housing to H-2A workers and non-H-2A workers in corresponding employment, furnish written pay statements containing specifically enumerated information to such workers, and refrain from

unreasonable deductions—rejecting many of the same arguments Plaintiff again raises here. And it reasonably explained its decision to award CMPs and back wages for these violations.

> i. *Plaintiff's drug testing policy was a material condition of employment, which Plaintiff was required to disclose it in its job order.*

Plaintiff does not dispute that it instituted a drug testing policy, pursuant to which employees could be terminated for not submitting to or failing a drug test; that it did not disclose the possibility of drug testing in its job order; or that it subjected all its employees to a drug test. AR831; ECF No. 18 at 17. Instead, it argues that "the test does not change any of the material terms of the certified offer of employment." *Id.* at 19. This argument is unavailing.

Plaintiff's drug testing policy was a material condition of employment. Black's Law Dictionary defines "material," as "of a nature that knowledge of the item would affect a person's decision-making; significant; essential." Material, BLACK'S LAW DICTIONARY (11th ed. 2019). Citing this definition, the ARB reasoned that drug testing is a material condition of employment because it "surely could affect an H-2A worker's decision to apply for or accept employment with [Plaintiff] and has a significant impact on the employer-employee relationship." The ARB explained that "[e]mployees, especially . . . H-2A workers who take the extraordinary step of leaving their home countries . . . should know before applying for and accepting a position that they may be subjected to drug testing, and that they could be disqualified . . . or terminated based on [its] results[.]" AR831. And the ARB noted that Plaintiff's policy clearly affected whether it would employ particular individuals. *Id.*

The ARB properly noted that the materiality of Plaintiff's drug testing policy is also supported by "decisions of administrative bodies in other contexts that have held that drug testing policies are material terms of employment . . . or otherwise may impact an individual's decision-

11

making when it comes to accepting an employment offer." AR832. In *Crust & Crumb v. Oliva-Lara*, for instance, which arose under the analogous PERM job visa program, the Department determined that "criminal background check and drug testing requirements make a position 'less favorable' than" those "that do not require them[.]" AR832 n.23 (quoting BALCA No. 2011-PER-02196, ETA No. A-08256-86573, slip op. at 2-3 (BALCA May 1, 2014)).

It is also "significant," as the ARB recognized, that the job order form itself, Form ETA-790, requires employers to disclose to the Department and SWAs whether certain job requirements exist, including mandatory drug testing. *Id.* (citing AR504). The H-2A regulations define job order as "the document containing the material terms and conditions of employment . . . on the employer's Form ETA-790,'" which SWAs use to recruit U.S. agricultural workers. 20 C.F.R. § 655.103(b). As noted, the Form ETA-790 that Plaintiff submitted to the TWC contained a checklist of 13 potential job requirements and directed employers to "check all requirements that apply." AR504. One of these 13 potential requirements was "Drug Screen[ing]." *Id.*[5] The fact that Plaintiff was required to disclose whether it imposed mandatory drug testing shows that the Department considers mandatory drug testing to be a material condition of employment.

None of the cases that Plaintiff cites provides any support for its argument that the ARB erred in finding that its drug testing requirement was a material condition of employment. Five of the six cases address whether a purported agreement contains all of the essential terms, in sufficient definiteness, to constitute a valid employment or sales contract under state law—a separate issue that has no bearing on this case. ECF No. 18 at 18-19 (citing *Ferreira v. Carpionato Corp.*, 895

---

[5] Plaintiff continues to contend that "[t]he Form ETA-790 … in use at the time that [it] applied for permission to hire foreign agricultural workers was silent as to a drug policy." ECF No. 18 at 19. As the ARB noted, this is plainly "erroneous." AR832 n.24. The Form ETA-790 that Plaintiff submitted to the TWC contained a box for "Drug Screen," which Plaintiff did not check. AR502, AR832. By doing so, Plaintiff effectively certified that drug testing was not a condition of the positions it was offering.

F.2d 818, 822 (1st Cir. 1990); *Neeley v. Bankers Trust Co.*, 757 F.2d 621, 628 (5th Cir. 1985);

*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Kelly v. Rio Grande*

*Computerland Grp.*, 128 S.W.3d 759, 767 (Tex. App. 2004); *John Wood Grp. USA, Inc. v. ICO,*

*Inc.,* 26 S.W.3d 12, 20 (Tex. App. 2000)). Plaintiff also cites a decision arising under the H-1B

program of the INA, ECF No. 18 at 18 (citing *Matter of Simeio Sols., LLC*, 26 I. & N. Dec. 542,

548 (2015)); however, the reasoning of this decision supports rather than undermines the ARB's

determination that mandatory drug testing is a material condition of employment.[6]

Plaintiff also fails to provide any support for its sweeping claim that "the addition of a drug

test is an … unwritten condition[] that can be fairly read into any contract of employment in

Texas," ECF No. 18 at 19. Nor does this unsubstantiated claim show that the ARB's decision was

arbitrary or capricious. The issue here is whether Plaintiff's drug-testing policy is a material

condition of employment within the meaning of the H-2A regulations, not Texas law. And as the

ARB explained, "[t]he fact that a term or condition of employment" may be "widespread or

common does not resolve the question of whether it is material." AR833. Thus, the ARB

reasonably determined that even if Plaintiff had established that "drug testing or screening is

widespread in the Texas agricultural industry," it would "nevertheless hold that" drug testing "is a

material term of employment, and, therefore, had to be disclosed on [Plaintiff's] job order." *Id.*

Finally, while the Secretary maintains that the ARB's reading was required by the

regulatory text, to the extent that the Court concludes that the regulation is ambiguous, the ARB's

---

[6] In *Simeio*, the USCIS Administrative Appeals Office held that because a worker's place of employment dictates the wage that an H-1B employer must pay the worker, it is a material condition of employment that the Department and USCIS must consider in processing the employer's H-1B application. 26 I. & N. Dec. at 549. Just as the Department and USCIS must know where an H-1B employer is proposing to employ a foreign worker to determine whether its application identifies the proper wage rate, the Department and SWAs must review each drug-testing requirement that an H-2A employer seeks to impose to determine whether it is "bona fide and consistent with normal and accepted qualifications" imposed by comparable non-H-2A employers and thus whether the employer's H-2A Application can be approved. 20 C.F.R. §§ 655.121(a)(3), (b); *id.* at 655.122(b).

conclusion that mandatory drug testing is a material condition of employment was a reasonable interpretation of any regulatory ambiguities to which this Court must defer. An agency's reasonable interpretation of any "genuinely ambiguous" regulatory provisions is entitled to deference. *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 362 (5th Cir. 2021) (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414, 2416 (2019)). For the reasons above, the ARB's resolution of any ambiguities by concluding that mandatory drug testing is a material condition of employment is a reasonable interpretation that is entitled to deference.

> ii. *Plaintiff failed to provide sanitary housing to its H-2A and U.S. workers.*

Plaintiff contends that its unsanitary housing was "de minimis and beyond [its] control" because "any unsanitary conditions in the worker housing were created by" the workers it hired through the TWC, who "came from deep South Texas[.]" ECF No. 18 at 9. Plaintiff claims that it "tried to keep the premises sanitary" and notes that its housing was inspected by the TWC and met City of Richmond, Texas, standards when the workers were hired. *Id.* at 8-9. These claims are unavailing as they are contrary to the record, including its owners' own statements, and are inconsistent with the H-2A regulatory scheme.

Under the H-2A program, Plaintiff was required to "provide housing at no cost to the H-2A workers and those workers in corresponding employment who [were] not reasonably able to return to their residence within the same day." 20 C.F.R. § 655.122(d)(l). Where, as here, an employer satisfies this obligation through employer-provided housing, such housing must meet federal safety and health standards, here, "the full set of [OSHA] standards set forth at 29 [C.F.R. §] 1910.142." *Id.* at (d)(l)(i). These OSHA temporary labor camp standards provide that "[t]he grounds and open areas surrounding the [employer-provided housing] shall be maintained in a clean and sanitary condition free from rubbish, debris, waste paper, garbage, or other refuse." 29

14

C.F.R. § 1910.142(a)(3). They also require that "[e]ffective measures . . . be taken to prevent infestation by and harborage of animal or insect vectors or pests." *Id.* at (j).

The ARB reasonably concluded that Plaintiff failed to meet "the full set" of OSHA sanitation standards and that its violations were not de minimis. AR836. "Photographs in the record show what appears to be rat or other pest feces in a kitchen cabinet," as well as "a significant amount of debris and garbage in the area immediately surrounding the housing, including a stove, overturned trash cans, discarded mattresses, and piles of refuse." *Id.* "Tellingly," the ARB noted, Plaintiff's "owner also conceded that he 'absolutely' would not want to live in conditions reflected in the photographs[.]" *Id.*

Plaintiff erroneously suggests that employers can satisfy their H- 2A obligations by providing workers with housing that meets applicable standards at a single point in time: when the workers are first hired. *See* ECF No. 18 at 8-9. However, "an employer has an ongoing responsibility to help ensure that employer-provided housing meets the applicable standards throughout the period of occupation." AR837. In particular, the OSHA standards require the grounds to be "maintained in a clean and sanitary condition." *Id.* at n.43 (citing 29 C.F.R. § 1910.142(a)(3)). As the ARB noted, "maintain" is defined as "'[t]o <u>continue</u> (something) or '[t]o care for (property) . . . ; to engage in general repair and <u>upkeep</u>.'" *Id.* (quoting Maintain, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphases in ARB decision).

Moreover, Plaintiff's claims that it "tried to keep the premises sanitary" and that "any" issues with its housing were "beyond [its] control," ECF No. 18 at 9, are contradicted by the evidence of record. Plaintiff "presented essentially no evidence that it took even minimal steps to help maintain the property after the H-2A workers moved in." AR837. And as the ARB acknowledged, Plaintiff "has not explained why it could not at least maintain the grounds and keep

the common areas outside of the housing free of the discarded appliances, furniture, and other trash

discovered by the WHD investigator." AR838. The ARB thus reasonably concluded that Plaintiff's

housing failed to meet applicable OSHA standards. *Id.*

> ### iii. *Plaintiff furnished inadequate pay statements to H-2A and U.S. workers.*

Plaintiff concedes that it failed to include its FEIN in the pay statements it issued to H-2A

workers and U.S. workers. ECF No. 18 at 6. This is an explicit regulatory requirement: Plaintiff

was obligated to furnish "written statements" to each H-2A and U.S. worker in its nursery "on or

before each pay day" containing "the employer's name, address, and FEIN." 20 C.F.R.

§§ 655.122(k)(l), (4), (8). Plaintiff contends that it nonetheless "complied with the pay statement

requirements," based on two unavailing arguments. ECF No. 18 at 6.

First, Plaintiff argues that it uses a payroll service and that "[a]ll of the requirements of the

Regulations are complied with" by this service. ECF No. 18 at 7. Regardless of whether it is

asserting that it should be relieved of liability because it uses a payroll service or that the

Department should for some reason have deferred to the payroll service's judgment, this claim is

without merit. As the ARB noted, "'[t]he employer' is responsible for furnishing a compliant pay

statement, and the regulation does not make any provision for shifting responsibility . . . to another

entity." AR835 (quoting 20 C.F.R. §. 655.122(k)(8)). The plain language of the regulations

requires H-2A employers to include their FEIN on their pay statements.[7]

Second, Plaintiff argues that two Department webpages addressing the Fair Labor

Standards Act ("FLSA") show that "an employer is not even required to provide a pay stub," and

that "a comparison" of its pay statements with Form WH-501, which employers can use to comply

---

[7] Plaintiff also claims that its payroll service does not include its FEIN "on paycheck stubs for privacy reasons." ECF No. 18 at 7. However, whatever the motivation of Plaintiff or its payroll service, "the regulation is clear that a FEIN must be included in each case." AR834-35.

with their obligations under the FLSA and MSPA, shows it "is in compliance with the Regulations." ECF No. 18 at 7 (citing AR117). However, "[t]he FLSA and the MSPA are distinct federal labor laws" and "[r]egardless of what [they] require, the applicable H-2A regulations require employers to issue pay statements identifying their FEIN." AR834.

*iv.  Plaintiff's deductions from H-2A workers' earnings were unreasonable.*

Plaintiff does not contest that it deducted $12,036.16 from its H-2A workers' wages for FICA taxes or that these workers are categorically exempt from these taxes. Rather, Plaintiff claims that these deductions were not unlawful because "[t]he workers voluntarily approved the withholding," by filing IRS Form W-4s with Plaintiff; "they received any money due them when they filed their [tax] return[s]"; and Plaintiff "did not retain possession of any of those funds." ECF No. 18 at 15-16. These arguments rest on a misapplication of IRS forms and guidance and the H-2A regulations and are not supported by the evidence of record.

The H-2A regulations provide that any deduction that reduces the wage paid to H-2A workers and workers in corresponding employment below the required wage rate, here the AEWR, "must be reasonable." 20 C.F.R. § 655.122(p)(l)-(2); *id.* at 655.120(a). The Department found, and Plaintiff does not contest, that it paid its H-2A workers no more than the AEWR before these deductions. AR839 n.49. Thus, Plaintiff's deductions for FICA taxes from its H-2A workers' wages were only permissible to the extent they were reasonable—which they were not.

In determining whether a deduction is reasonable, the H-2A regulations provide that parties should look to FLSA wage deduction principles. 20 C.F.R. § 655.122(p)(2) (citing 29 C.F.R. part 531). Under the relevant FLSA regulation, 29 C.F.R. § 531.38, employers may lawfully withhold taxes from an employee's earnings that reduce their wage below the statutory minimum <u>only</u> if the tax is "assessed against the employee" and "forwarded to the appropriate governmental agency."

17

*Id.* Thus, Plaintiff was permitted to deduct FICA taxes from its H-2A workers' wages only if such taxes were "actually … owed by the employees." AR840. IRS guidance makes clear—and Plaintiff does not dispute—that H-2A employees are "exempt from FICA taxes for Social Security and Medicare." AR133. Accordingly, as the ARB determined, "the deductions [Plaintiff] made for these taxes were not permissible[.]" AR839.

Plaintiff's claim that its H-2A workers "voluntarily approved the withholding" of FICA taxes from their earnings, ECF No. 18 at 15, by submitting Form W-4s is "nonsensical," AR618. IRS Form W-4 authorizes the withholding of federal income taxes, from which H-2A employees are not exempt; nowhere on the form does it mention FICA taxes. AR518-21; AR125. As the ARB recognized, "[a]n executed Form W-4 in which an employee fails to claim an exemption from withholdings does not give the employer carte blanche to deduct for any and all taxes, including those that the employee does not actually owe." AR839.

Additionally, Plaintiff "proffered no evidence that the amounts unlawfully deducted from the H-2A workers' pay" for FICA taxes "were actually refunded or returned to them." AR840. Moreover, in deducting FICA taxes from the H-2A workers, Plaintiff violated the prohibition against unreasonable deductions "regardless of whether [Plaintiff] profited from the practice." AR840. When an H-2A employer deducts taxes that are not owed and the deduction reduces the employee's earnings below the required wage rate, the employer has violated the H-2A program requirements, even if it does not benefit from the deduction. 20 C.F.R. § 655.122(p)(2).[8]

### *v.   The ARB reasonably awarded back wages and CMPs.*

The ARB affirmed WHD's assessment of CMPs and back wages for all four violations of

---

[8] To the extent Plaintiff is arguing that its deductions from H-2A workers' wages are not unlawful because "[t]he withholding was performed by … [its] payroll service," ECF No. 18 at 15, this argument is also unavailing. As the ARB determined, Plaintiff "may not shift responsibility or liability for complying with the H-2A requirements to a third party." AR839.

the H-2A program requirements. AR841. Plaintiff argues that in so doing, it failed to follow Department regulations. ECF No. 18 at 24. It also argues that the ARB's award of CMPs and back wages for its deductions from H-2A workers' wages should be reduced. *Id.* at 16-17. Neither challenge supports a conclusion that the ARB's decision is arbitrary or capricious.

This Court should not consider Plaintiff's claim that the ARB failed to follow its regulations in awarding a CMP for three of Plaintiff's violations—undisclosed drug testing, unsanitary housing, and inadequate pay statements—as Plaintiff "did not challenge the amount or reasonableness of the penalty assessed by [WHD] for" any of these violations below. AR829, AR833, AR835. Issue exhaustion is required where, as here, "claimants bear the responsibility to develop issues for adjudicators' consideration." *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2021).[9] Because Plaintiff did not contest the amount or reasonableness of the CMPs for these three violations before the ALJ or ARB, its claim is forfeited here. *Id.* at 1358–59.

In any event, Plaintiff's claim that the ARB failed to follow its regulations in awarding CMPs is conclusory. It devotes one sentence to this argument, stating only that the Department "did not follow its own regulations in the assessment of the civil penalties … including but not limited to 29 C.F.R. § 501.14(e)." ECF No. 18 at 24 [*sic*].[10] As Plaintiff does not substantiate this claim, it has failed to satisfy its burden of proof. *See San Luis Obispo*, F.2d at 37.

Plaintiff also argues that it should be "relieved of any civil penalty on [the] issue" of its unlawful deductions of FICA taxes from H-2A workers' earnings "due to a complete lack of wrongdoing" and that it should be given "credit . . . for all monies paid by it to" its payroll

---

[9] The Department's H-2A enforcement proceedings are "formal adversarial adjudications."  29 C.F.R.§ 18.101; *id.* at 501.34. Before the ALJ, the parties must identify contested issues, *id.* at 18.80(c), and the ALJ "has all powers necessary to conduct fair and impartial proceedings," *id.* at 18.12(b), 18.20. As here, parties may seek ARB review of an ALJ's decision. *Id.* at 501.42(a).

[10] Defendant believes Plaintiff intended to cite 29 C.F.R § 501.19, which governs WHD's assessment of CMPs under the H-2A program. (There is no 29 C.F.R. § 501.14.)

processor, "and/or, received by the affected employees," as it did "not engage in any self-seeking or self-enriching behavior in this matter." ECF No. 18 at 16-17. However, the ARB considered these issues, and it reasonably explained its decision to affirm WHD's back wage and CMP assessment nonetheless. *See Prometheus*, 141 S. Ct. at 1158 .

With respect to Plaintiff's request for a "credit" for refunds allegedly received by its H-2A workers, the ARB noted that Plaintiff "offered no evidence that H-2A workers were actually repaid the amounts deducted for Social Security and Medicare taxes." AR840. "Accordingly," as the ARB determined, "there is no basis upon which the board could grant [Plaintiff] a credit." *Id.* "Regarding the CMP," the ARB noted that "the H-2A implementing regulations provide a series of factors that may be considered in assessing the amount of a penalty." *Id.* (citing 29 C.F.R. § 501.19(b)). These include, for instance, the number of workers affected and the gravity of the violation. 29 C.F.R. § 501.19(b). However, Plaintiff failed to "offer[] any analysis of the relevant factors or otherwise provide[] a sufficient basis to disturb the relatively small penalty assessed by the Administrator." *Id.* Upon considering the relevant factors, the ARB concluded that Plaintiff's "excuses" were "unpersuasive[.]" And it reasonably determined that "the magnitude of the violation, which resulted in improper deductions totaling $12,036.16 from ten H-2A workers, warrants the $2,700 penalty[.]" AR841. Because the ARB reasonably considered the relevant issues, including Plaintiff's objections, and reasonably explained its decision, the ARB's award of CMPs and back wages for Plaintiff's unlawful deductions was neither arbitrary nor capricious.

### B.  The Department's adjudication does not violate Article III.

Plaintiff claims that by "adjudicat[ing]" WHD's H-2A claims and "assess[ing] damages and civil penalties," the Department "assumed … judicial power" over its "private rights," in violation of Article III of the Constitution. ECF No. 18 at 20-23. As an initial matter, Plaintiff impliedly consented to administrative adjudication by never raising this constitutional issue before

the ALJ or ARB. In any event, the Department's ALJs and ARB do not exercise "judicial power" because they do not issue binding judgments for Article III purposes and, in any event, adjudicate only public rights. This Court should reject Plaintiff's Article III claim.

*i.   Plaintiff impliedly consented to the Department's adjudication.*

Plaintiff's Article III claim should be dismissed because it consented to executive adjudication. Non-Article III adjudicators may "decide claims submitted to them by consent" without "offend[ing] the separation of powers so long as Article III courts retain supervisory authority over the process." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 678 (2015). Here, Article III courts retain supervisory authority over the Department's adjudication: Plaintiff is in this Court challenging that adjudication under the APA.

A litigant "may impliedly consent" to jurisdiction of a non-Article III tribunal "through [its] actions," including by litigating before a non-Article III tribunal without objection. *In re Trib. Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018) (citing 575 U.S. at 684). That is exactly what happened here. Upon receiving WHD's Determination Letter, Plaintiff requested a hearing before an ALJ, AR018, and then continued to litigate through the Department for the next four years, never once objecting to the agency's non-Article III status. Plaintiff thus impliedly consented to non-Article III adjudication.

*ii.   The Department is not exercising "judicial power."*

Even if this Court reaches the merits of Plaintiff's Article III claim, it fails at the outset because the Department is not exercising any "judicial Power of the United States," U.S. Const. art. III, § 1, under the H-2A program. "[A] 'judicial Power' is one to render dispositive judgments" that are binding on the parties. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995) (citation omitted). An exercise of judicial power cannot be revised by the Political

21

Branches, Congress, and the Executive. *Id.* at 222. Here, the Department did not exercise any "judicial power" because its assessment of back wages and penalties was subject to supervision by the Political Branches. *See, e.g.*, *Plaut*, 514 U.S. at 218–19. While the ALJ imposed back wages and penalties, that decision was examined by the Department's ARB. AR829; 29 C.F.R. § 501.42(a). It was also subject to review by the Secretary, a political appointee. *Cf.* 85 Fed. Reg. at 13187 § 6(a). Plaintiff—like any other H-2A violator—could also petition Congress for a law that would directly decide its case on more favorable terms. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018). Thus, Plaintiff's Article III claim should fail.

### iii.  The Department is only adjudicating public rights.[11]

Even if this Court were to examine Plaintiff's Article III claim through the lens of public and private rights, the claim would still fail. When determining whether a proceeding involves an exercise of Article III power, the Supreme Court has distinguished between "public rights" that can be adjudicated outside Article III courts and "private rights" that cannot. *Oil States*, 138 S. Ct. at 1373. Public rights encompass "matters which arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Id.* (citations omitted). Moreover, the Supreme Court has made clear that a case involves public rights, even if the federal government is not a party, if "the claim at issue derives from a federal regulatory scheme" or is "integrally related to particular Federal Government action." *Stern v. Marshall,* 564 U.S. 462, 490-91 (2011).

---

[11] Plaintiff also suggests that actions to recover CMPs "requir[e] trial by jury." ECF No. 18 at 23. In determining whether a jury trial is required, the Court looks at the same public-rights doctrine that animates the Court's Article III cases. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51 (1989).

The government's case against Plaintiff for its H-2A violations falls squarely within the public-rights doctrine. The Supreme Court has never found an Article III violation in a matter between the government and a private actor—as contrasted with matters about the liability of one individual to another—especially in an area, like immigration and foreign commerce, that is subject to Congress's plenary powers. *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 334 (1909) (noting that Congress's authority "over foreign commerce and its right to control the coming in of aliens into the United States" entitles it to "regulate that subject in the fullest degree"). Because "control of the admission of aliens is committed exclusively to Congress," in "the exercise of that control, it may lawfully impose appropriate obligations, sanction their enforcement by reasonable money penalties, and invest in administrative officials the power to impose and enforce them." *Lloyd Sabaudo Societa Anonima Per Azioni v. Elting,* 287 U.S. 329, 334 (1932).

Here, Plaintiff was able to hire foreign agricultural workers only "by grace of" Congress and the Executive, *Stern*, 564 U.S. at 493, subject to detailed conditions set forth by statute and regulation. 8 U.S.C. § 1188. Thus, this case not only "arise[s] between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments," *Oil States*, 138 S. Ct. at 1373, but also "derives from a federal regulatory scheme" and is "integrally related to particular Federal Government action," *Stern*, 564 U.S. at 490–91. Further, only the Secretary can enforce the terms and conditions of employment under the H-2A program. 8 U.S.C. § 1188(g)(2); *Ruiz v. Fernandez*, 2012 WL 1442556, at *3 (E.D. Wash. 2012). Plaintiff cites no case finding improper non-Article III adjudication under these circumstances, as no such case exists.

Neither the Fifth Circuit's recent decision in *Jarkesy v. SEC,* -- F.4th --, 2022 WL 1563613 (5th Cir. May 18, 2022), nor *Tull v. United States*, 481 U.S. 412, 419 (1987), the case Plaintiff

cites, support Plaintiff's constitutional claim. *Tull* is unhelpful to Plaintiff as it involved a lawsuit by the government against an individual in federal court, not a government enforcement action in agency proceedings. *Tull*, 481 U.S. at 414. As courts have recognized for decades, *Tull* is not applicable to agency proceedings; instead, *Atlas Roofing* controls. *See e.g.*, *Sasser v. EPA*, 990 F.2d 127, 130 (4th Cir. 1993); *In re Collier*, 2022 WL 874730, at *3 (S.D. Ill. 2022); *United States v. Xuan*, 1993 WL 114335, at *1 (E.D. La. 1993). And *Atlas Roofing* is unequivocal that "the Government could commit the enforcement of statutes and the imposition and collection of fines to the judiciary, in which event jury trial would be required, but that the United States could also validly opt for administrative enforcement, without judicial trials." *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 460 (1977) (citations omitted); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51 (1989). Even the Supreme Court in *Tull* itself distinguished *Atlas Roofing* and noted that "the Seventh Amendment is not applicable to administrative proceedings." 481 U.S. at 418 n.4.[12]

In any event, *Jarkesy* is distinguishable on its own terms. There, the Fifth Circuit determined that the Securities and Exchange Commission's securities fraud "claim[] and civil penalties" implicated private rather than public rights because, among other reasons, it was "analogous to [a] traditional fraud claim[] at common law" rather than a "'matter[] that could be conclusively determined by the Executive and Legislative Branches.'" 2022 WL 1563613 at *7 (quoting *N. Pipeline Constr. Co. v. Marathon Pipeline Co*, 458 U.S. 50, 67 (1982)). But here, "control of the admission of aliens <u>is</u> committed exclusively to" the Legislative Branch. *Lloyd Sabaudo*, 287 U.S. at 334 (emphasis added). And Congress has "entrusted to an administrative agency the task of adjudicating violations of the customs and immigration laws and assessing

---

[12] For this reason, the vigorous and well-reasoned dissent explained, the majority in *Jarkesy* erred in holding that the SEC must enforce civil penalties in federal court with jury trials. *Jarkesy*, 2022 WL 1563613, at *14–20 (Davis, J., dissenting).

penalties based thereon." *Atlas* Roofing, 430 U.S.at 451; *see also id.* (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932) (noting "'[f]amiliar illustrations of administrative agencies created for the determination of [public rights] matters'" in connection with "'foreign commerce'" and "'immigration'"). The regulation of immigration is a quintessential example of the government acting in its sovereign capacity to create and enforce public rights that did not exist at common law. Like in *Atlas Roofing*, absent the statutory scheme that created the H-2A program, no suit could have been brought to seek the types of penalties at issue in this case. Accordingly, for this and other reasons discussed above, the Department's adjudication of H-2A program violations implicates only public rights.[13]

## V.     CONCLUSION

Defendant respectfully requests that the Court grant his cross-motion, deny Plaintiff's motion for summary judgment, and issue an order directing Plaintiff to pay the back wages and CMPs awarded by the Department's ARB.

Respectfully submitted,

JENNIFER B. LOWERY
United States Attorney

By: */s/ Annalisa L. Cravens*
      Annalisa L. Cravens
      Assistant United States Attorney
      *Attorney-in-Charge*
      Texas Bar No. 24092298
      Southern District No. 2791281
      1000 Louisiana Street, Suite 2300
      Houston, Texas 77002
      Tel.: (713) 567-9489
      Fax: (713) 718-3303
      Email: Annalisa.Cravens@usdoj.gov

---

[13] The time for the government to file a petition for rehearing or a petition for certiorari has not expired and therefore the Fifth Circuit's decision in *Jarkesy* is not yet final. If this Court is inclined to conclude that *Jarkesy* dictates the outcome in this federal immigration enforcement matter, Defendant requests that the Court stay this case until *Jarkesy* is final.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 6, 2022, this document was filed via CM/ECF, which will serve a copy on all counsel registered.

*/s/ Annalisa L. Cravens*
Annalisa L. Cravens
Assistant United States Attorney
