UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| FRANK'S NURSERY, LLC<br>    Plaintiff,<br><br>v.<br><br>MARTIN J. WALSH, Secretary of Labor,<br>United States Department of Labor,<br>    Defendant. | No. 4:21-cv-03485 |

**DEFENDANT'S REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant Martin J. Walsh, in his official capacity as Secretary of Labor of the United States Department of Labor ("Defendant") respectfully files this reply in support of his cross-motion for summary judgment. Defendant established that he is entitled to judgment as a matter of law on Plaintiff's claims under the Administrative Procedure Act ("APA") and Article III the United States Constitution. In accordance with the APA, the Department of Labor's ("Department") Administrative Review Board ("ARB") reasonably concluded that Plaintiff violated four H-2A program requirements, rejecting many of the arguments that Plaintiff reprised in its motion for summary judgment.[1] And the ARB reasonably explained its decision to affirm the modest Civil Money Penalties ("CMP") and back wages assessed by the Department's Wage

---

[1] For ease of reference, the ARB concluded that Plaintiff violated the requirements that employers (1) disclose all material terms and conditions of employment by imposing a mandatory drug testing requirement that did not disclose in its job order; (2) furnish sanitary housing to H-2A workers by housing them in a trailer surrounded by trash, broken appliances, and soiled mattresses, and with rodent feces in the kitchen; (3) furnish adequate written pay statements to such workers by failing to include its Federal Employer Identification Number ("FEIN") in its pay statements; and (4) refrain from unreasonable deductions by deducting thousands of dollars in Federal Insurance Contribution Act ("FICA") taxes from the earnings of its H-2A workers, who are exempt from such taxes, bringing their wages below the required rate. AR831-841.

and Hour Division ("WHD") for these violations.[2] Nothing about the Department's adjudication of WHD's H-2A claims against Plaintiff implicates Article III. Plaintiff consented to non-Article III adjudication of this matter by litigating it before the Department for years without objection. In any event, the Department does not exercise judicial power under the H-2A program within the meaning of Article III. And public rights, which may be adjudicated by non-Article III tribunals, are the only type of rights at issue here, because this matter involves an enforcement action by the federal government; arises under immigration, an area of law subject to Congress's plenary control; and derives from the H-2A program, a statutory and regulatory scheme without which no such action could have been brought and Plaintiff could not have hired temporary foreign agricultural workers in the first place.

Plaintiff has not meaningfully refuted Defendant's arguments. On its APA claim, Plaintiff attempts to raise last-ditch challenges to the ARB's reasonable award of back wages and CMPs for its numerous H-2A violations. (ECF No. 22) Yet Plaintiff forfeited these challenges by failing to raise them until the last minute, and they lack merit in any event. Otherwise, Plaintiff reiterates arguments without addressing the points made in Defendant's cross-motion. Plaintiff's response to Defendant's showing that the Department's adjudication of this matter is well within its constitutional authority is heated in rhetoric but conclusory in substance.

## ARGUMENT

**I. Failure to disclose mandatory drug testing: Plaintiff's drug testing policy was a material condition of employment which was explicitly omitted from the job order form.**

---

[2] The ARB noted that Plaintiff failed to contest the reasonableness of the CMPs assessed for all but one of these violations, the unreasonable deductions, before the ALJ or the ARB. AR829, AR833, AR835. And the ARB reasonably determined, based on an application of the regulatory criteria at 29 C.F.R. § 501.19(b) and in the absence of evidence that employees were repaid the amounts improperly deducted from their wages, that the remedies assessed for Plaintiff's unreasonable deductions were warranted. AR840-841.

Plaintiff admits that the job order form, Form ETA-790, requires the disclosure of mandatory drug testing but argues that the job order "also contains other things" which, coupled with federal laws, somehow relieve Plaintiff of its obligation to disclose the material condition of employment, despite the fact that Plaintiff explicitly indicated on the job order that mandatory drug testing is *not* required. ECF No. 22 at 13-14. According to Plaintiff, these "other things" in the job order include a Texas Workforce Commission ("TWC") attachment with (1) "provisions that anticipate that workers might have to be terminated for bad conduct" for "serious acts of misconduct" and (2) unspecified "provisions that anticipate that changes to the conditions of employment might occur after workers arrive on the job." *Id.* at 14-15 (citing AR512).

The Court should not consider these last-minute assertions by Plaintiff which were not brought before the ARB or ALJ. Plaintiff cannot bring issues that have not been exhausted, because "claimants bear the responsibility to develop issues for adjudicators' consideration." *Carr v. Saul,* 141 S. Ct. 1352, 1358 (2021); *see also Fleming v. USDA*, 987 F.3d 1093, 1100 (D.C. Cir. 2021) ("On deferential review under the APA . . . we could not conclude that a decision by the Judicial Officer was arbitrary and capricious in failing to identify, raise, and resolve *sua sponte* an issue never presented to her."). Plaintiff also failed to raise these arguments in its motion for summary judgment (ECF No. 18, or "opening brief"). *See RedHawk Holdings Corp. v. Schreiber Trustee,* 836 F. App'x 232, 235 (5th Cir. 2020) (internal citations omitted) ("Generally, neither this court nor the district courts of this circuit will review arguments raised for the first time in a reply brief.").

Even if the Court considers these belated arguments, they are conclusory and do not rebut the materiality of Plaintiff's drug testing policy as a condition of employment. *See San Luis Obispo Mothers for Peace v. NRC*, 789 F.2d 26, 37 (D.C. Cir. 1986) ("the party challenging an

agency's action as arbitrary and capricious bears the burden of proof"). Plaintiff fails to articulate how a provision in a state workforce agency attachment to its job order, which notes that H-2A employers may terminate employees for "serious . . . misconduct," undermines the ARB's reasonable conclusion that Plaintiff's mandatory drug testing policy is a material condition of employment or the ARB's award of a CMP for Plaintiff's imposition of its policy without disclosing it in its job order. Plaintiff says it instituted its drug testing policy "after workers were found smoking marijuana." ECF No. 22 at 13. However, the question of whether an H-2A employer could, for instance, terminate an employee for being intoxicated at work—of which there is no evidence in the record here—is fundamentally different from the issue of whether a mandatory drug testing policy is a material condition of employment that an H-2A employer must disclose before imposing it on its employees. Plaintiff also fails to cite any provision approving changes to the material conditions of employment, which may disqualify workers from employment entirely, after the workers leave their home countries and arrive on the job.

Plaintiff's citations to other statutes outside of the H-2A context do not address its failure to disclose this condition of employment. Plaintiff purports that there are Occupational Safety and Health Administration ("OSHA") regulations under the Drug Free Workplace Act ("DFWA") "that deal with workplace drug testing," citing two non-OSHA regulations, 29 C.F.R. § 1472.635 and 48 C.F.R. § 52.223-6, that do not mention drug testing. ECF No. 22 at 15. It also claims, without support, the DFWA "encourages, advocates, and for some employers, requires" drug testing. *Id.* at 15. The DFWA requires federal contractors and grantees—not H-2A employers—to certify that they will provide a drug-free workplace, 41 U.S.C. §§ 8102(a)(1), 8103(a)(1), and, in any event, it "establishes no requirement for drug testing." *Parker v. Atlanta Gas Light Co.*, 818 F. Supp. 345, 347 (S.D. Ga. 1993). Additionally, Plaintiff argues "it is an

4

unwritten term in all employment relationships that the worker . . . will behave within the bounds of the law . . . ." ECF No. 22 at 14. Regardless of the merit of this sweeping claim, Plaintiff has not explained how it shows that the ARB's decision on its drug testing policy was arbitrary or capricious, particularly since Plaintiff's argument seems to be that even if a job order explicitly indicates that drug testing is not required, an H-2A employer can change this condition of employment as long as its workers could have conceivably found such a requirement somewhere in federal law.

Plaintiff also emphasizes that the one employee whom it terminated as a result of its drug testing policy—whom it rather brazenly identifies by name—"was not an H-2A worker. In fact, no H2A workers were terminated or disciplined as the result of [Plaintiff] instituting drug screen." ECF No. 22 at 14. This argument, which Plaintiff also failed to raise in its opening brief, fundamentally misunderstands the purpose of the H-2A program, which protects H-2A and domestic workers alike. Indeed, the H-2A regulations prohibit employers from offering preferential terms and conditions to H-2A workers so as "to ensure the employment of foreign workers does not adversely affect . . . similarly employed American workers." *Mendoza v. Perez*, 754 F.3d 1002, 1008 (D.C. Cir. 2014) (citing 20 C.F.R. § 655.122(a); 8 U.S.C. § 1188(a)(1)(B)). That only a domestic worker was terminated as a result of Plaintiff's drug testing policy in no way supports Plaintiff's claim that the ARB's decision on this issue was arbitrary or capricious.

> II. **Failure to furnish sanitary housing to its workers: Plaintiff fails to rebut its ongoing obligation to maintain a clean environment and has not shown that it took even minimal actions to meet this requirement.**

Looking at the plain language of the regulations, the ARB concluded that "an employer has an ongoing responsibility to ensure the employer-provided housing meets the applicable standards throughout the period of occupation." AR837; *see* 29 C.F.R. 1910.142(a)(3) (requiring grounds to be "*maintained* in a clean and sanitary condition") (emphasis added); 20 C.F.R. §

5

655.122(d)(1), (2) ("[e]mployer-provided housing must meet the full set of [OSHA] standards" for temporary labor camps). Plaintiff's arguments regarding shared responsibility between employer and employees were rejected by the ARB, because Plaintiff "presented essentially no evidence that it took even minimal steps to help maintain the property after the H-2A workers moved in." AR837; *see FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021) (under arbitrary and capricious review, "[a] court simply ensures . . . the agency . . . has reasonably considered the relevant issues and reasonably explained the decision.").

Plaintiff points to language in the TWC Attachment to its job order, which purportedly "contemplated that the workers themselves played some role in the upkeep of their housing." ECF No. 22 at 9 (citing AR508). Like the other TWC Attachment provisions discussed above, Plaintiff raises this language and argument for the first time in its response brief; thus, this Court should not consider this argument. *See Carr,* 141 S. Ct. at 1358; *Fleming*, 987 F.3d at 1100; *RedHawk,* 836 F. App'x at 235. Even if this Court considers this argument, terms attached to an employer's job order do not call into question the fact that, contrary to the regulations, Plaintiff failed to take "even minimal" steps to maintain sanitary housing after the H-2A workers arrived.

### III. Failure to include FEIN in pay statements: Creative argument cannot get past a direct violation of the plain language of the statute, and Plaintiff is precluded from challenging the CMPs for the first time in this proceeding.

There is no dispute that Plaintiff did not include its FEIN in the pay statements as required by law. To get around this plain language requirement, Plaintiff's response brief claims "no one was harmed" by this omission. ECF No. 22 at 7. However, the ARB "reasonably considered" and "reasonably explained" its rejection of this argument, which is raised for the first time in this proceeding in Plaintiff's response brief. *See Prometheus Radio*, 141 S. Ct. at 1158. The ARB noted that Plaintiff's "policy- and purpose-driven arguments," including that its pay statement violation caused "no harm," "cannot override the plain language of the regulation," which is

6

"clear that a FEIN must be included in each case." AR834-35.[3] Plaintiff purports that "[t]here was no rational basis behind the Government's penalizing [it] for the payroll practices of Paychex," its third-party payroll processor. ECF No. 22 at 8. Yet Plaintiff cannot shift its own responsibility to include the required information in its pay statements to its third-party payroll processor.

Plaintiff also argues the CMP assessed by WHD for its failure to include the FEIN in the pay statements is inconsistent with "the criteria that is supposed to be used by the Government in assessing a civil penalty" at 29 C.F.R. § 501.19(b). Plaintiff then proceeds, for the first time, to discuss the specific criteria. ECF No. 22 at 6-7.[4] However, Plaintiff forfeited this argument, since, as the ARB noted in its decision, Plaintiff failed to make "any argument . . . below or on appeal as to the reasonableness or amount of the CMP assessed by [WHD] for this violation." AR835. "[O]n deferential review under the APA," courts will "not conclude that a decision by [an agency] was arbitrary and capricious in failing to identify, raise, and resolve *sua sponte* an issue never presented to [it]." *Fleming*, 987 F.3d at 1100.

> IV. **Unlawful deduction of FICA taxes from workers' earnings: Plaintiff was not allowed to deduct taxes that reduced H-2A workers' wages below the required rate, because these taxes were not actually owed by the H-2A workers.**

Plaintiff did not meet the requirements to withhold taxes in an amount that brought its H-2A workers' wages below the Adverse Effect Wage Rate ("AEWR") and thus was not allowed

---

[3] Moreover, the Department added "the employer's name, address, and FEIN" to the information required in H-2A employees' earnings statements because this information is important to the Department's ability to effectively enforce program requirements. Preamble to Final Rule, U.S. Dep't of Labor, Emp't & Training Admin., Temp. Agric. Emp't of H-2A Aliens in the U.S., 75 Fed. Reg. 6884, 6906 (Feb. 12, 2010) (characterizing such information as "essential to the employee's understanding [of] … the identity of the employer," and to their ability to "report violations of the H-2A provisions to the Department.").

[4] Plaintiff's opening brief is entirely conclusory on this point, claiming, without explanation, that the ARB "did not follow its own regulations in the assessment of [CMPs] … including but not limited to 29 C.F.R. § 501.14(e) [*sic*]." ECF No. 18 at 24.

7

to withhold the FICA taxes at issue. Deductions which reduce the wages of H-2A workers below the AEWR, like here, "must be reasonable." 20 C.F.R. § 655.122(p)(1); *see also* 20 C.F.R. § 655.122(p)(2) (an employer's H-2A "wage requirements . . . will not be met where . . . unauthorized deductions . . . reduce the wage payment made to the employee below the minimum amounts required under this subpart[.]"). Fair Labor Standards Act ("FLSA") principles regarding reasonable deductions are incorporated into the H-2A program and permit Plaintiff to deduct FICA taxes from the wages of its H-2A workers (who earned no more than the AEWR) *only* if such taxes were "actually . . . owed by the employees," which they were not. AR840 (citing 20 C.F.R. § 655.122(p)(1), (2), 29 C.F.R. § 531.38). Plaintiff does not dispute this fact and admits "there is a law that says that H2A workers do not owe Social Security and Medicare taxes . . . ." ECF No. 22 at 10.

      Plaintiff's other arguments confuse federal income taxes with FICA taxes, which are not owed by H-2A workers. It purports that the withholding of FICA taxes is somehow "require[d] . . . under the FLSA." *Id*. at 10-11. Plaintiff did not raise this argument below or in its opening brief and, regardless, is incorrect. The statutory provision that Plaintiff cites is from the Internal Revenue Code, not the FLSA. *See id*. at 11 (citing 26 U.S.C. § 2402(a)(1) [*sic*] [5]). The cited provision requires employers to withhold only *federal income taxes* from certain employees' wages. The ARB determined that Internal Revenue Service guidance specifies that employers should not withhold FICA taxes from H-2A workers' earnings.[6] AR838 (citing AR133).

      Moreover, Plaintiff's disclosure of its FICA deductions does not convert taxes from which its H-2A workers are exempt—and thus that were unreasonable to deduct from their earnings—into taxes the workers actually owe. Plaintiff claims such deductions "would not come as a

---

[5] It appears Plaintiff intended to cite 26 U.S.C. § 3402(a)(1). (There is no 26 U.S.C. § 2402).

8

surprise" to these workers because it disclosed that such "withholding was going to be performed." ECF No. 22 at 10-11. In support, it points again to a section of the TWC Attachment that accompanied its job order. *Id.* (citing AR510). Again, this argument should not be considered because Plaintiff failed to raise it in the administrative proceeding and its opening brief. Nonetheless, Plaintiff was not allowed to deduct these taxes, and the question of "surprise" cannot circumvent regulatory limitations on tax withholding.

> **V.  Plaintiff's conclusory assertions do not overcome Defendant's overwhelming showing that this case does not violate Article III.**

Supreme Court precedent holds that Congress has "significant latitude to assign adjudication of public rights to entities other than Article III courts." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018). Plaintiff's cites to *Jarkesy* are unavailing. *See* ECF No. 22 at 17. As Defendant previously argued, *Jarkesy* is distinguishable on its own terms as it involved a claim of securities fraud rather than, as here, regulation of immigration, a quintessential example of the government acting in its sovereign capacity to create and enforce public rights that did not exist at common law.[7] And Plaintiff has no response to Defendant's showing that it consented to non-Article III adjudication of WHD's H-2A claims during the four-year administrative proceeding.

The Fifth Circuit and the Supreme Court have repeatedly affirmed the constitutionality of administrative adjudication under statutory schemes that provide for substantial evidence review in Article III courts. *See Oil States*, 138 S. Ct. at 1371, 1379 (rejecting Article III challenge to inter parties review of patent by Patent Trial and Appeal Board, the factual determinations of which are subject to substantial evidence review in Federal Circuit); *Atlas Roofing Co. v.*

---

[7] On July 1, 2022, the government filed a petition for rehearing en banc in *Jarkesy*. Petition for Rehearing En Banc, *Jarksey v. SEC*, No. 21-61007 (5th Cir. July 1, 2022).

*Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 455 n.13, 460 (1977) (Seventh Amendment does not preclude administrative adjudication of claims under Occupational Safety and Health Act, which are subject to substantial evidence review in Court of Appeals, as such claims involve public rights); *Austin v. Shalala*, 994 F.2d 1170, 1177 (5th Cir. 1993) (rejecting Article III challenge to Social Security Administration adjudication of claims for overpayment of benefits, which are subject to substantial evidence review in federal court). Plaintiff nonetheless asserts that the "constitutional vice" of administrative adjudication is substantial evidence review, which "changes the Government's burden of proof when it does appear before an impartial tribunal." ECF No. 22 at 17. This Court should not consider this argument, as Plaintiff failed to raise it in its opening brief. In any event, like Plaintiff's other arguments in its response regarding its constitutional claims, Plaintiff cites to no cases to support this sweeping assertion, which contradicts Supreme Court and Fifth Circuit precedent.

## CONCLUSION

For the foregoing reasons and those stated in his cross-motion for summary judgment and response in opposition to Plaintiff's motion (ECF No. 21), Defendant Martin J. Walsh respectfully requests that the Court grant his cross-motion for summary judgment, deny Plaintiff's motion for summary judgment, and issue an order directing Plaintiff to pay the back wages and Civil Money Penalties awarded by the Department of Labor's Administrative Review Board.

Dated: July 5, 2022

Respectfully submitted,

JENNIFER B. LOWERY
United States Attorney

By: */s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney

Southern District No. 3257790  
Texas Bar No. 24106434  
1000 Louisiana Street, Suite 2300  
Houston, Texas 77002  
Tel.: (713) 567-9600  
Fax: (713) 718-3303  
myra.siddiqui@usdoj.gov  

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

    I hereby certify that on July 5, 2022, the foregoing was served on counsel of using the CM/ECF system.

<u>/s/ Myra Siddiqui</u>  
Myra Siddiqui  
Assistant United States Attorney