United States District Court
Southern District of Texas
**ENTERED**
July 14, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FRANK'S NURSERY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-3485 |
| | § | |
| MARTIN J WALSH, SECRETARY, | § | |
| United States Department of Labor, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION ON THE
CROSS MOTIONS FOR SUMMARY JUDGMENT**

Frank's Nursery, LLC, challenges the administrative proceedings the Department of Labor brought against it for violating four H-2A visa program requirements. The Department found ample evidence of the violations and imposed civil monetary penalties of $12,387, as well as back wages of $12,036.16. Frank's Nursery moved for summary judgment, challenging the violation findings and financial penalties as arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 501 *et seq*. (Docket Entry No. 18). Frank's Nursery also argued that the decision was inconsistent with the Department's procedures and that both the decision and the Department itself are unconstitutional. The government responded and filed a cross motion for summary judgment, arguing that the decision was consistent with the Act, supported by the administrative record, and consistent with the Constitution. (Docket Entry No. 21). Frank's Nursery replied. (Docket Entry No. 22). The court heard oral argument on the motions.

Based on the motions, the administrative record, the parties' arguments, and the applicable law, the court denies Frank's Nursery's motion for summary judgment, (Docket Entry No. 18),

and grants the government's cross-motion, (Docket Entry No. 21).  Final judgment is entered by separate order.  The reasons are analyzed below.

I.    **Background**

A.    **The H-2A Regulatory Framework**

"Under the federal government's H–2A visa program, certain employers may request H–2A visas for foreign nationals to perform temporary agricultural work in the United States."  *Tex. RioGrande Legal Aid, Inc. v. Range*, 594 F. App'x 813, 814 (5th Cir. 2014); *see* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).  To request H-2A workers, an employer must seek certification from the Department of Labor that (1) "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed" to fill the positions, and (2) hiring foreign workers "will not adversely affect the wages and working conditions of workers in the United States similarly employed."  8 U.S.C. § 1188(a)(1); 20 C.F.R. § 655.100.

Congress directed the Secretary of Labor to promulgate regulations implementing the H-2A program.  8 U.S.C. § 1101(a)(15)(H).  Under these regulations, an employer seeking to hire H-2A workers must first recruit U.S. workers by submitting a "job order, Form ETA-790," to the state workforce agency serving the area of intended employment.  20 C.F.R. § 655.121(a)(1); *see also* 8 U.S.C. § 1188(b)(4).  The job order is "[t]he document containing the material terms and conditions of employment" on the employer's Form ETA-790 submitted to the SWA.  20 C.F.R. § 655.103(b).  The state workforce agency recruits domestic workers using the terms and conditions contained in the job order and refers interested applicants to the employer.  20 C.F.R. §§ 655.121(a)–(d).  After posting the job order with the appropriate state workforce agency, a prospective H-2A employer must then file an Application for Temporary Employment

Certification ("H-2A Application") with the Department and must include a copy of its job order with its H-2A Application.  20 C.F.R. § 655.130(a).

Once "an employer's H-2A application is approved and the employer hires foreign laborers," the employer "must continue to provide its American and foreign workers the minimum wages and working conditions laid out in the regulations to ensure the employment of foreign workers does not adversely affect . . . similarly employed American workers." *Mendoza v. Perez*, 754 F.3d 1002, 1008 (D.C. Cir. 2014) (citing 20 C.F.R.§ 655.122(a)); 8 U.S.C. § 1188(a)(1)(B). The employer must provide housing that complies with "the full set of" Occupational Safety and Health Administration sanitation standards for temporary labor camps. 20 C.F.R. § 655.122(d)(l)(i) (citing 29 C.F.R. § 1910.142).

Additionally, employers must furnish each H-2A worker and non-H-2A worker in corresponding employment with "one or more written statements . . . on or before each pay day" containing, among other information, "[t]he employer's name, address, and [Federal Employer Identification Number]."  20 C.F.R. § 655.122(k)(8).  All deductions from workers' earnings must be reasonable, and employers are prohibited from making unreasonable deductions that reduce workers' wages below the required rate, here the Adverse Effective Wage Rate.  20 C.F.R. § 655.120(a), 655.122(p)(l)–(2).

The Secretary of Labor "is authorized to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of contractual obligations, as may be necessary to assure employer compliance with terms and conditions of employment" of the H-2A program.  8 U.S.C. § 1188(g)(2).  The Department's Wage and Hour Division Administrator investigates possible H-2A violations.  The Administrator may recover

back wages, debar the employer from receiving future H-2A labor certifications, and impose civil money penalties.  29 C.F.R. §§ 501.15, 501.16(a)(1), 501.19(a), 501.20(a).

To institute administrative proceedings, the Administrator issues a determination letter explaining Wage and Hour Division's findings and imposes sanctions and remedies.  *Id.* at §§ 501.31, 501.32.  An employer may request a hearing before an Administrative Law Judge to review the Administrator's determination.  *Id.* at §§ 501.33(a), 501.34, 501.35.  The parties may appeal an Administrative Law Judge's decision to the Department's Administrative Review Board.  *Id.* at § 501.42(a); Sec'y's Order 01-2020, 85 Fed. Reg. 13187 (Mar. 6, 2020).  The Secretary may review the Administrative Review Board's decision.  85 Fed. Reg. 13187.  Absent such review, the Administrative Review Board's decision is the final agency decision.  *Id.*

### B.    Factual Background

Frank's Nursery, LLC has operated a commercial nursery in Richmond, Texas, since 2001. (Docket Entry No. 16-4 at 6).  As an agricultural business, Frank's Nursery fills temporary agricultural jobs with seasonal employees, including H-2A workers and corresponding U.S. workers.  (*Id.*).  From February 6, 2015, through April 2, 2016, the Wage and Hour Division of the Department of Labor investigated Frank's Nursery's compliance with the H-2A program requirements.  (*Id.*).

In November 2015, Frank's Nursery submitted a job order Form ETA-790 to the Texas Workforce Commission as part of the H-2A program process.  (Docket Entry No. 17-1 at 12–25). The form included a list of 13 job requirements and instructed the employer to check all that apply. (Docket Entry No. 17-1 at 14).  One of the possible requirements, which Frank's Nursery did not check, is "Drug Screen."  (Docket Entry No. 17-1 at 14).  Frank's Nursery attests, and the

4

government does not dispute, that at the time of submitting the form, Frank's Nursery did not have a drug screen policy.  (Docket Entry No. 18 at ¶ 53; Docket Entry No. 22 at ¶ 35).  Sometime after submitting the Form ETA-790, Frank's Nursery imposed an "extensive drug testing policy" on its workforce, including H-2A employees and others.  (Docket Entry No. 17-5 at 96).  Frank's Nursery policy required every employee to submit to a drug test.  Frank's Nursery imposed the same requirement on its owner and family members.  (Docket Entry No. 17-5 at 96).  A positive test was a basis for discipline, including termination.  (Docket Entry No. 17-5 at 96).

During the 2016 agricultural season, Frank's Nursery provided a mobile home for H-2A workers and U.S. workers as required by the H-2A program.  (Docket Entry No. 17-1 at 20). Photographs taken during a government inspection of the mobile home show trash and clutter outside the mobile home, including a stove and several mattresses.  (Docket Entry No. 17-2 at 35–42).  One photograph shows two rat droppings in a kitchen cabinet.  (Docket Entry No. 17-2 at 42; *see also* Docket No. 16-3 at 123).[1]  Frank's Nursery's owner testified that he would "[a]bsolutely not" want to live in this condition, and that his employees were "living like pigs."  (Docket Entry No. 16-5 at 25).

The Department of Labor investigation revealed that Frank's Nursery did not include its Federal Employer Identification Number on pay statements it issued to its H-2A and U.S. workers. (Docket Entry 17-5 at 98; Docket Entry No. 16-3 at 118–21; Docket Entry No. 17-2 at 28).  Frank's Nursery argues that its pay statements conformed to the government's suggested form.  (Docket

---

[1] Frank's Nursery argues that the only photograph in question is the rat dropping, (Docket Entry No. 18 at ¶25; Docket Entry No. 22 at ¶ 17).  The reference appears to be to an earlier exhibit that had only one photo.  (*Compare* Docket Entry No. 16-3 at 123 *with* Docket Entry No. 17-2 at 35–42).

Entry No. 18 at ¶ 20).  That form contains a box for "Employer identification number."  (Docket Entry No. 16-3 at 117; *compare id.* at 118–21).  Frank's uses Paychex, Inc. for payroll service. Frank's Nursery argues that Paychex was responsible for including the required information on the paystubs, and blames Paychex for any violation.  (Docket Entry No. 17-2 at 28).

The government also discovered that Frank's Nursery deducted Social Security and Medicare taxes from its H-2A workers' pay.  (Docket Entry No. 17-5 at 103).  Frank's Nursery noted in its ETA Form 790, which it filed with the Department of Labor, that it would deduct Federal Insurance Contributions Act taxes from its workers' wages.  (Docket Entry No. 17-1 at 22).  Frank's Nursery deducted a total of $12,036.16 in Federal Insurance Contributions Act taxes from its H-2A employees' earnings between February 2015 and April 2016.  (Docket Entry No. 17-5 at 94).  During that time, the workers' wages were lower than the statutory minimum.  (*Id*. at 104; *see also id.* at 94, n. 49).

### C.    The Administrative Procedure

The government investigated Frank's Nursery's compliance with H-2A regulations for the period of February 6, 2015, to April 2, 2016.  (Docket Entry No. 17-5 at 93).  The Wage and Hour Division issued a Determination Letter dated January 4, 2018.  (Docket Entry No. 16-3 at 9).  The letter explained that Frank's Nursery's failure to disclose that drug testing was a condition of employment violated the H-2A program regulations.  The Administrator found that Frank's Nursery had also violated the H-2A program requirements by not providing sanitary housing or adequate pay statements to H-2A workers and non-H-2A workers in corresponding employment, and made unreasonable deductions from workers' earnings.  (Docket Entry No. 16-3 at 14–15). The Wage and Hour Division assessed civil monetary penalties for these violations and back wages

equal to the Federal Insurance Contribution Act taxes that Frank's Nursery had deducted from H-2A workers' wages.  (*Id.* at 13–15).  Frank's Nursery timely appealed these portions of the Wage and Hour Division's determination.  (*Id.* at 16–21).

Frank's Nursery and the Wage and Hour Division Administrator filed cross-motions for summary decision.  (*Id.* at 64–92; Docket Entry No. 16-4 at 3–18).  The Administrative Law Judge granted the Administrator's motion with respect to Frank's Nursery's failure to furnish sanitary housing or adequate pay statements to its H-2A workers and U.S. workers, and its unlawful deductions from H-2A workers' pay.  (Docket Entry No. 17-3 at 52–53) (citing 20 C.F.R. §§ 655.122(d)(1), (k)(8), (p)).  The Administrative Law Judge denied the Administrator's motion with respect to the drug testing disclosure, finding that Frank's Nursery was not required to disclose its drug testing requirement in its job order.  (Docket Entry No. 17-3 at 51).  Frank's Nursery and the Administrator timely petitioned the Administrative Review Board for review of different parts of the Administrative Law Judge's decision.[2]

The Administrative Review Board reversed the Administrative Law Judge's ruling on the drug testing requirement and affirmed the Administrative Law Judge's conclusion with respect to the housing conditions, the failure to include the Federal Employer Identification Number on paystubs, and the Federal Insurance Contribution Act deductions.  (Docket Entry No. 17-5 at 106). The Administrative Review Board concluded that Frank's Nursery's drug testing requirement was a material condition of employment, so it had to be disclosed on Frank's Nursery's job order

---

[2]  The Wage and Hour Division also determined that Frank's Nursery failed to pay adequate wages to U.S. workers who performed the same duties as its H-2A workers (in corresponding employment), for which it assessed CMPs and back wages, (Docket Entry No. 16-3 at 14), but the Administrative Law Judge concluded that there was insufficient evidence to support this claim.  (Docket Entry No. 17-3 at 49–50). The Administrator did not seek review of the Administrative Law Judge's denial of relief on this claim.

because it could affect an H-2A employee's decision to apply for or accept employment with Frank's Nursery. (Docket Entry No. 17-5 at 95–98). The Administrative Review Board affirmed the Administrative Law Judge's conclusion that Frank's Nursery's housing conditions failed to meet Occupational Safety and Health Administration sanitation standards and that Frank's Nursery had an ongoing responsibility to provide sanitary housing; that Frank's Nursery's failure to include its Federal Employer Identification Number on its pay statements violated H-2A regulations; and that Frank's Nursery's deductions of Federal Insurance Contribution Act taxes were unreasonable because, pursuant to H-2A regulations, "the taxes must actually be owed by the employees . . . to avoid a violation." (Docket Entry No. 17-5 at 98–105).

The Administrative Review Board upheld the back wages and civil money penalty amounts assessed by the Wage and Hour Division for these violations. (Docket Entry No. 17-5 at 105–06). The Administrative Review Board noted that Frank's Nursery failed to challenge—before either the Administrative Law Judge or the Administrative Review Board—the amount or reasonableness of the civil monetary penalties assessed for the failure to disclose the drug testing requirement, the unsanitary housing, and its failure to include its Federal Employer Identification Number in its pay statements. (Docket Entry No. 17-5 at 94, 98, 100). The Administrative Review Board declined to reduce the back wages or civil money penalties assessed for Frank's Nursery's unlawful deductions in light of "the magnitude of the violation," and because Frank's Nursery "offered no evidence that the H-2A workers were actually repaid the amounts deducted for" or "any analysis of the relevant factors" for assessing civil monetary penalties in the H-2A regulations. (Docket Entry No. 17-5 at 105–06).

In October 2021, Frank's Nursery filed a complaint against the government challenging the Administrative Review Board's decision under the Administrative Procedures Act ("APA").

8

(Docket Entry No. 1).  The Secretary of Labor answered.  (Docket Entry No. 7).  Frank's Nursery filed a motion for summary judgment, the government filed a response and cross-motion for summary judgement, and Frank's Nursery filed a response and reply.  (Docket Entry No. 18, 21, 22).

## II.    Legal Standards

### A.    Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing an absence of evidence to support the nonmoving party's case.  *Fret v. Melton Truck Lines, Inc.*, No. 17-50031, 2017 U.S. App. LEXIS 16912, at *5–6 (5th Cir. Sept. 1, 2017) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)).  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Boudreaux v. Swift Transp.*

*Co.*, 402 F.3d 536, 540 (5ᵗʰ Cir. 2005)).  A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 Fed. App'x 260, 262 (5ᵗʰ Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5ᵗʰ Cir. 2007)).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5ᵗʰ Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 Fed. App'x 328, 331 (5ᵗʰ Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5ᵗʰ Cir. 2010)).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5ᵗʰ Cir. 2014).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 Fed. App'x 313, 317 (5ᵗʰ Cir. 2016) (quoting *Boudreaux*, 402 F.3d 536, 540 (5ᵗʰ Cir. 2005)).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5ᵗʰ Cir. 2017).

**B.     Review of Agency Decisions**

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  "The entire case on review is a question of law." *Id.* (quotation marks omitted).  "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as

10

a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Stuttering Found. Of Am. V. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)).  "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the [Administrative Procedure Act] standard of review." *Id.*

Under the APA, agency action may be held unlawful and set aside only if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "The arbitrary and capricious standard is highly deferential." *Knapp v. Dep't of Agric.*, 796 F.3d 445, 453 (5th Cir. 2015) (quotation marks omitted).  "Arbitrary and capricious review focuses on whether an agency articulated a rational connection between the facts found and the decision made . . . ." *Id.* (quotation marks omitted).  Agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir.1993) (quotation marks omitted).  "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Id.*  "A court simply ensures . . . the agency . . . has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio* Project, 141 S. Ct. 1150, 1158 (2021).  In reviewing a challenge to the agency's decision, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Luminant Generation Co., LLC v. EPA*, 714 F.3d 841, 850 (5th Cir.2013) (alteration omitted) (quotation marks omitted).

III.     **Analysis**

A.     **The 706(2)(A) Claims**

1.     **The Drug Testing Policy**

An employer seeking to participate in the H-2A program must disclose all material terms and conditions of employment on the Form ETA-790 that is used to secure certification for hiring workers from the Office of Foreign Labor Certification.  The ETA-790 contains a checklist of thirteen potential job requirements and directs employers to "check all requirements that apply." (Docket Entry No. 17-1 at 14).  "Drug screen" is listed as one of the requirements.  (Docket Entry No. 17-1 at 14).

Frank's Nursery concedes that it implemented a drug-testing policy, but argues that the ETA-790 was accurate because it did not have a drug-testing requirement at the time that they filed the application.  Frank's Nursery argues that the new drug-testing policy was not a material change to the terms of employment.

The Administrative Review Board reasoned that "material" means "[o]f a nature that knowledge of the item would affect a person's decision-making; significant; essential." (Docket Entry No. 17-5 at 96).  The Administrative Review Board concluded that drug testing was a material condition of employment:

> Employees, especially those like H-2A workers who take the extraordinary step of leaving their home countries to accept temporary employment in the United States, should know before applying for or accepting a position that they may be subjected to drug testing, and that they could be disqualified, disciplined, or terminated based on the results thereof.

(Docket Entry No. 17-5 at 96–97).  Other administrative agencies have come to similar conclusions, and the agency tasked with preparing job order forms specifically identified "drug screen" as one of the job requirements that an employer seeking to employ H-2A workers must

12

disclose on its Form ETA-790.  *See e.g.*, *In re Ramada Plaza Hotel*, 341 N.L.R.B. 310, 316, 2004 WL 390651, *13 (2004).

Frank's Nursery also argues that it imposed the mandatory drug testing policy only after it discovered workers smoking marijuana.  This argument confuses the ability of an H-2A employer to fire an employee for misconduct at work with the ability of that employer to falsely represent that it did not have a drug testing policy.

Frank's Nursery also cites two OSHA regulations under the Drug Free Workplace Act. These regulations do not mention drug testing, 28 C.F.R. § 1472.635, and 48 C.F.R. § 52.223-6, and the Act, 41 U.S.C. § 81 *et seq.*, does not establish a drug testing requirement.

Ample evidence showed that Frank's Nursery violated the condition of the H-2A visa program that required the employer to disclose drug testing. Frank's Nursery's motion for summary judgment on this claim is denied, and the government's cross motion is granted.

## 2.    The Sanitary Housing Requirement

The Administrative Review Board concluded that Frank's Nursery failed to provide housing for the H-2A temporary agricultural workers that met the "clean and sanitary conditions" requirement throughout the period.  (Docket Entry No. 17-5 at 102–03).  The H-2A program required Frank's Nursery to provide housing at no cost to the H-2A workers and those workers in corresponding employment "who [were] not reasonably able to return to their residence within the same day."  20 C.F.R. § 655.122(d)(1).  Frank's Nursery had to meet federal safety and health standards set under the Occupational Health Safety Act for temporary labor camps, including that housing and surrounding areas must be "maintained in a clean and sanitary condition free from rubbish, debris, waste paper, garbage, or other refuse."  20 C.F.R. § 655.122(d)(1)(i); 29 C.F.R.

13

§ 1910.142(a)(3).    Effective measures must also be taken to prevent pests.    29 C.F.R. § 1910.142(j).  The Occupational Health Safety Administration standards require the grounds to be "maintained in a clean and sanitary condition." 29 C.F.R. § 1910.142(a)(3). "Maintain" is defined as "[t]o continue (something)" or "[t]o care for (property) for purposes of operational productivity or appearance; to engage in general repair and unkeep." BLACK'S LAW DICTIONARY (11th ed. 2019).

The record—including photographs of animal feces on kitchen cabinets and of piles of debris and garbage in the areas right around the houses—and Frank's Nursery's owner's statement that he "absolutely" would not want to live in such conditions, amply showed a failure to maintain the premises as required.  Frank's Nursery blames the workers for failing to take enough steps  to keep the housing clean and free of debris.  Although workers have some responsibility for their own living conditions, Frank's Nursery presented no evidence that it took "even minimal steps" to maintain sanitary housing for the workers it hired.  (Docket Entry No. 17-5 at 102).   Frank's Nursery has argued that it "tried to keep the premises sanitary"; it hired an exterminator; the city picked up trash weekly.  (Docket Entry No. 17-5 at 102).  But Frank's Nursery acknowledged that it passed other upkeep and cleaning responsibilities to the workers.  There is no argument that the workers were responsible for removing the trash, appliances, and mattresses from the areas right around the housing provided.  The attempted defense that any violation was the workers' fault is not supported by the record or the regulations.

Frank's Nursery has not shown that there is a basis for the relief it seeks from this court. Frank's Nursery's motion for summary judgment on this point is denied, and the government's motion is granted.

14

### 3.    The Pay Stubs Without the Federal Employer Identification Number

Frank's Nursery acknowledged that it did not include its Federal Employer Identification Number in the pay statements it issued the H-2A workers and U.S. workers, as required by 20 C.F.R. § 655.122(k)(1), (4), (8). Frank's Nursery attempts to excuse this failure by blaming the payroll service it hired. But the regulations clearly make the H-2A employer—Frank's Nursery— responsible for including its Federal Employer Identification Number on the pay statements and this responsibility cannot be shifted to a third party. 20 CFR § 655.122(k)(8). Frank's Nursery provides no authority to support that he can shift this duty to a third party. Frank's Nursery cites to the Department of Labor website, which explains that the Fair Labor Standards Act does not require employers to provide paystubs to employees. Even if the Fair Labor Standards Act does not require an employer to issue a paystub, the H-2A regulations require employers to issue a paystub that includes the employer's Federal Employer Identification Number.  20 C.F.R. § 655.122(k)(8).

Frank's Nursery's motion for summary judgment on this point is denied, and the government's cross motion is granted.

### 4.    Withholding of Medicare and Social Security Taxes

Frank's Nursery acknowledges that it deducted $12,036.16 from the wages of its H-2A workers for Federal Income Contribution Act taxes, even though these workers are exempt from Federal Income Contribution Act taxes. Frank's Nursery for the third time attempts to shifts the blame to third parties, and for the second time to the workers themselves. Frank's Nursery argues the workers voluntarily approved the withholding by filing out Form W-4s, on which they did not claim any exemption from tax withholdings; and the workers could have had the money refunded

or returned if the workers filed tax returns (despite their exemption).  Finally, Frank's Nursery argues that it did not benefit from the deductions.

The H-2A implementing regulations prohibit employers from making undisclosed or unauthorized deductions that reduce H-2A employees' pay below the minimum amounts required by the H-2A program.  20 C.F.R. § 655.122(p)(2).  The non-resident H-2A workers were exempt from Federal Income Contribution Act taxes for Social Security and Medicare, making, as the Administrative Review Board determined, the deductions "not permissible." (Docket Entry No. 17-5 at 104).  As for Frank's Nursery's argument that the employees themselves authorized the deductions by filling out Form W-4s, the Administrative Review Board explained: "[a]n executed Form W-4 in which an employee fails to claim an exemption from withholding does not give the employer carte blanche to deduct for any and all taxes, including those that the employee does not actually owe."  (Docket Entry No. 17-5 at 104).  And the Form W-4 instructions directed non-resident aliens not to claim an exemption in the W-4 forms.  IRS Notice 1392 (Rev. Nov. 2013), Supplemental Form W-4 Instructions for Nonresident Aliens, at 2, available at https://www.irs.gov/pub/irs-prior/nl392-2013.pdf.  The fact that Frank's Nursery did not benefit does not excuse the fact that it took deductions from H-2A workers' pay that it was not authorized to take.  This caused the H-2A workers' pay to drop below the minimum amounts required by the H-2A program, and therefore constitutes a violation.

Frank's Nursery also argues that it should be given credit for the amounts that have been refunded to the workers.  But it has not provided evidence as to whether or how much the workers were repaid.

The record amply shows that Frank's Nursery deducted taxes that the workers did not owe. The deduction reduced their earnings below the required wage rate. As a result, Frank's Nursery violated the H-2A program requirements.  20 C.F.R. § 655.122(p)(2).  Frank's Nursery's motion for summary judgment on this point is denied, and the government's cross motion is granted.

**B.     The Assignment of Back Wages and Civil Monetary Penalties**

The record amply supports the Administrative Review Board's award of civil monetary penalties and back wages for the deductions improperly taken from the H-2A workers' wages. Frank's Nursery did not challenge the amount or reasonableness of the penalties for the drug test, sanitary housing, or Federal Employer Identification Number violations before the Administrative Law Judge or the Administrative Review Board.  The record showed no basis to find that the H-2A workers were ever repaid the amounts Frank's Nursery deducted for Social Security and Medicare taxes, and therefore no basis to "credit" Frank's for a possible repayment.  The Board explained the factors it considered in setting the $12,387 penalty, including the small number of workers affected and the magnitude and flagrant nature of the violations.  (Docket Entry No. 17-5 at 106).  There is no basis for a different result in this court.

Frank's Nursery's motion for summary judgment on this point is denied, and the government's cross motion is granted.

**C.     The Article III Claims**

Frank's Nursery finally challenges the constitutionality of the administrative process he was subjected to.  He argues that the Department "assumed . . . judicial power" over private rights, in violation of Article III of the Constitution.  Frank's Nursery cites to the Fifth Circuit's recent opinion in *Jarkesy v. Sec. & Exch. Comm'n*, which concluded that the  Securities and Exchange

17

Commission's in-house adjudication of securities fraud violated the Seventh Amendment right to a jury trial. 34 F.4th 446, 453 (5th Cir. 2022).

None of Frank's Nursery's arguments are persuasive. Frank's Nursery consented to executive adjudication by litigating before the Administrative Law Judge and the Administrative Review Board without objection. And Congress may assign an action to administrative adjudication when, as here, the action implicates public rights. *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450 (1977). Public rights "arise when Congress passes a statute under its constitutional authority that creates a right so closely integrated with a comprehensive regulatory scheme that the right is appropriate for agency resolution." *Jarkesy*, 34 F.4th at 453. "Congress has entrusted to an administrative agency the task [of] adjudicating violations of the customs and immigration laws and assessing penalties based thereon." *Atlas Roofing Co.*, 430 U.S. at 451. The Department's adjudication of the H-2A program violations implicates public rights relating to immigration and labor law. The concerns raised in *Jarkesy* are not implicated here. The Department's adjudication raises no constitutional issues.

## IV.    Conclusion

The Administrative Law Judge and the Administrative Review Board detailed a rational connection between the facts and their decisions. The agency decision is well supported by the record evidence and was not arbitrary or capricious. Frank's Nursery's motion for summary judgment, (Docket Entry No. 18), is denied. The government's motion for summary judgment,

(Docket Entry No. 21), is granted.  Final judgment is entered by separate order.  Each party is to bear its own costs.

SIGNED on July 14, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge